# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

———

No. 03-6056WM

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Raymond L. Woodcock, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Raymond L. Woodcock, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Western District of Missouri |
| | * | |
| U.S. Department of Education, | * | |
| | * | |
| Defendant-Appellee. | * | |
| | * | |

———

Submitted: November 7, 2003
Filed: November 20, 2003

———

Before KRESSEL, Chief Judge, SCHERMER and MAHONEY, Bankruptcy Judges.

———

KRESSEL, Chief Judge.


The debtor, Raymond L. Woodcock, appeals from two orders of the bankruptcy court. The first order "dismissed" a motion to discharge certain debts and the second

order denied the debtor's motion to alter or amend the order of dismissal. Because we conclude that the bankruptcy erred in determining it lacked jurisdiction, we reverse.

## BACKGROUND

Woodcock obtained $20,000 in Stafford student loans from Chemical Bank to attend law school at Columbia University. The loans were guaranteed by New York State Higher Education Services Corporation. There were four loans of $5,000 each, evidenced by four promissory notes executed by Woodcock on September 24, 1979, May 21, 1980, June 16, 1981, and April 7, 1982.

On April 21, 1992, Woodcock filed bankruptcy under Chapter 7 of the Bankruptcy Code in the District of Colorado. In August of 1992, Woodcock brought an adversary proceeding seeking to determine the dischargeability of his student loan debts. In January of 1993, the United States Bankruptcy Court for the District of Colorado ruled that Woodcock's student loans were not dischargeable under 11 U.S.C. § 523(a)(8). Woodcock filed a motion for reconsideration which was denied. He then appealed to the United States District Court for the District of Colorado. On February 17, 1994, the district court affirmed the bankruptcy court's determination that the student loan debts were not discharged. Woodcock then appealed to the Tenth Circuit Court of Appeals. On January 6, 1995, the Tenth Circuit affirmed the decision of the district court, holding that the loans would not pose an undue hardship for the debtor, but remanded the case to the bankruptcy court for a determination of whether the NYSHESC had suspended the debtor's repayment period, thus affecting discharge under 11 U.S.C. § 523(a)(8)(A).[1] Woodcock then filed a petition for certiorari with

---

[1] Under 11 U.S.C. § 523(a)(8)(A), applicable to this proceeding, a discharge under 11 U.S.C. § 727 discharged an individual debtor from any debt for an educational loan if such loan first became due more than five years (exclusive of any applicable suspension of the repayment period) before the date of filing the petition. Thus, "dischargeability turned on the critical factor of whether there [were] 'any applicable suspension[s] of the repayment period...'" *Woodcock v. Chem. Bank (In*

the U.S. Supreme Court as to the undue hardship determination. On October 2, 1995, the Supreme Court denied his petition.

On May 17, 1995, Woodcock filed a motion in the bankruptcy court for summary judgment as to the suspension issue. The bankruptcy court granted Woodcock's summary judgment in part, holding that his fourth loan exceeded the maximum period and was, therefore subject to discharge. The bankruptcy court otherwise denied Woodcock's motion in part, holding that there were applicable suspensions of repayment on his first three loans, excepting the loans from discharge. Woodcock appealed to the district court again. The district court denied his motion for a change of venue and dismissed the appeal for failure to prosecute. Woodcock appealed this decision to the Tenth Circuit Court of Appeals, which reversed and remanded based on the failure of the district court to state the reasons for dismissal. On September 18, 1997, on remand, the district court affirmed the order of the bankruptcy court denying discharge on the three remaining student loans. Woodcock appealed this decision to the Tenth Circuit and that court, on June 22, 1998, affirmed. Woodcock filed another petition for certiorari and on January 11, 1999, the Supreme Court denied the petition.

Woodcock did not make payments on his student loan obligations to NYSHEC, and it filed a claim for assignment with the U.S. Department of Education. On June 13, 2001 and July 26, 2001, Woodcock's student loans were assigned to the U.S. Department of Education.

On April 27, 2001, Woodcock filed a motion to reopen the adversary proceeding. On April 5, 2002, he filed a "Motion to Discharge Debts to Specific Parties." Since it was now the holder of the student loans, the U.S. Department of

---

*re Woodcock)*, 45 F.3d 363, 367 (10th Cir. 1995) (quoting *Huber v. Marine Midland Bank, N.A. (In re Huber),* 169 B.R. 82 (Bankr.W.D.N.Y. 1994)).

Education moved to be substituted as the defendant in the adversary proceeding. On May 20, 2002, the U.S. Bankruptcy Court for the District of Colorado held a hearing on the motions. In a September 18, 2002 order, the bankruptcy court reopened the adversary proceeding, substituted the U.S. Department of Education as the defendant and granted Woodcock's motion to transfer venue to the U.S. Bankruptcy Court for the Western District of Missouri. The court, however, did not address Woodcock's motion to discharge debts, leaving that motion for the Missouri court.

After transfer of the case, on February 27, 2003, the U.S. Department of Education filed a motion to dismiss the reopened adversary proceeding, arguing that principles of res judicata required dismissal.[2] On June 12, 2003, the United States Bankruptcy Court for the Western District of Missouri issued an amended order to show cause why the case should not be dismissed for lack of subject matter jurisdiction. On July 7, 2003, Woodcock filed a response.

On July 28, 2003, the bankruptcy court entered an order of dismissal, finding that Woodcock's response did not adequately address the jurisdictional question. On August 4, 2003, Woodcock filed a motion to alter or amend the judgment, and requested that the court allow him to pursue an independent action or seek relief under Rule 60(b). On August 13, 2003, the bankruptcy court stated that it had no jurisdiction and denied Woodcock's motion. Woodcock now appeals from the July 28 and the August 13, 2003 orders.

STANDARD OF REVIEW

Since the bankruptcy court's determination as to its jurisdiction is a legal conclusion, we review it *de novo*. *Kelly v. Jeter* (*In re Jeter*), 257 B.R. 907, 909

---

[2] We seriously doubt that the Department of Education wants the adversary proceeding dismissed after all this time. We are not even sure what it would mean to dismiss an adversary proceeding after a final judgment has been entered. What it undoubtedly sought was denial of the debtor's motion.

4

(B.A.P. 8th Cir. 2001) (citing *Merch. Nat'l Bank of Winona v.Moen, (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999); *Bachman v. Laughlin, (In re McKeeman)*, 236 B.R. 667, 670 (B.A.P. 8th Cir. 1999)).

## DISCUSSION

That part of the Colorado order reopening the adversary proceeding was well-intentioned, but meaningless. While bankruptcy cases are closed and reopening them has significance, adversary proceedings, like civil actions, are not closed in any meaningful way. They are terminated or closed only for statistical purposes. It is certainly not true, as the debtor seems to suggest, that the reopening of the adversary proceeding was intended as a form of Rule 60 relief from the final judgment.

Transferring an adversary proceeding is authorized by 28 U.S.C. § 1412. "[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched what has been already done." *Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir. 1988) (quoting *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 868 (2d Cir. 1950); *see also Landwehr v. United States (In re Miller)*, 485 F.2d (5th Cir. 1973) (applying *Magnetic Engineering* in a bankruptcy context), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974)). "On change of venue, the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer." *Danner*, 858 F.2d at 521 (quoting *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 495 (J.P.M.D.L. 1968); *accord In re Yarn Processing Patent Validity Litig.*, 472 F.Supp. 174, 177 (S.D.Fla. 1979) (following *Plumbing Fixture*); *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 81 F.R.D. 482, 487 (E.D.Mich. 1979 ), *aff'd,* 664 F.2d 114 (6th Cir. 1981); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). As a result, the bankruptcy

court had the same jurisdiction that the Colorado bankruptcy court had before transfer.

## CONCLUSION

Since we conclude that the bankruptcy court did have jurisdiction over the adversary proceeding and all pending motions, we reverse its order of dismissal.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.